IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| DELON KIBBE, BRANDON KIBBE and JOEL KIBBE, JR. § § § | |
| V. § | CIVIL ACTION NO. G-12-319 |
| § THOMAS MAFFAY, ET AL. § | |

## OPINION AND ORDER

Before the Court is the Defendants' Motion for Summary Judgment filed on December 12, 2014. Pro se Plaintiffs Delon Kibbe and her two sons Brandon Kibbe and Joel Kibbe were granted an extension from February 13, 2015 until April 3, 2015, to file a response, but to date none has been filed and no extension has been requested. Of course, a response is not required to a Motion for Summary Judgment, therefore, the Court considers the Motion to be ripe for consideration.

Even when the Plaintiffs fail to file a response to the Defendants' Motion for Summary Judgment the Court may not grant a summary judgment by default. Eversley v. MBank of Dallas, 843 F.2d 172, 174 (5th Cir. 1988)  However, the Court may accept the Defendants' evidence as undisputed, Id., and then determine whether that undisputed evidence has made a *prima facie* showing of an entitlement to summary judgment. C.F. Dahlberg & Co. v. Chevron USA, Inc., 836 F.2d 915, 919 (5th Cir. 1988)  Under this

test the Court has carefully reviewed the Defendants' Motion, read the Plaintiffs' depositions and attached exhibits; it now issues this Opinion and Order.

The Court has identified only two specific incidents committed by the named Galveston Police officers which are potentially meritorious: Brandon's arrest on May 23, 2011, and the warrantless entry into the Plaintiffs' residence and arrest of Joel on October 20, 2012. Both Brandon and Joel suffer from some degree of mental problems.

Brandon was confronted by some of the Defendants at 3:00 a.m. on May 23, 2011, while walking alone in his neighborhood. The officers were in the area because a theft from an automobile had just been reported. At the time, Brandon was, to some degree, under the influence of medication, but he did manage to call his mother and tell her he had been stopped. When Brandon did not identify himself promptly enough to suit the officers he was grabbed by a female officer, taken to the ground, kneed in the back and handcuffed. Other officers arrived and one tasered Brandon while he was restrained. Brandon was then transferred to the jail. During the incident Delon arrived at the scene and she was able to observe most it. According to Brandon and Delon the Defendants had absolutely no reason to use any degree of force against Brandon or to arrest him. Under those circumstances, a false arrest claim and an excessive use of force claim could be pursued.

However, as a result of Brandon's arrest he was charged with, among other things, resisting arrest "by using force against (a) peace officer." Unfortunately, for Brandon, on October 4, 2011, he pleaded no contest to that charge and was convicted in County Court No. 3. That conviction has not been reversed or set aside. As a result, the doctrine announced in Heck v. Humphrey, 512 U.S. 477 (1994), renders Brandon's potential claims meritless. Under Heck, where success in a plaintiff's claims would call into question the validity of his related conviction his claims must be dismissed unless he first has his conviction invalidated. Here, Brandon was convicted of resisting arrest and using force against one of the arresting officers. Hence, Brandon's claims for false arrest and excessive use of force imply that his conviction was not valid. "This is true because the question of whether the police applied reasonable force in arresting him depends in part on the degree of his resistence, which in turn will place in issue whether his resistence (the basis of his conviction [for resisting arrest]) was justified, which, if it were, necessarily undermines that conviction." Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996), see also, Sappington v. Bartee, 195 F.3d 234, 236 (5th Cir. 1999) and Hainze v. Richards, 207 F.3d 795, 798 (5th Cir. 2002)   Consequently, these claims of Brandon must be dismissed.

On October 20, 2012, Defendants McNeal and Dominguez drove to the Kibbe residence. At the time there was an outstanding felony warrant for Joel's arrest. The officers stopped and approached Delon who was standing by the front gate. Defendants Franco and Rutherford soon arrived and Franco and Dominguez went inside the house

without a search warrant or consent.  They found Joel and arrested him.  Under these circumstances a Fourth Amendment claim could exist.

But other undisputed facts defeat the claim.  According to Dominguez's report, just prior to his arrival at the Kibbe residence McNeal had seen Joel on the front porch.  Delon, who knew Joel was wanted on the warrant, protested when the officers began to approach the house and told them to leave.  Reasonably suspecting Joel was inside, the officers went to the front door, announced their presence and called for Joel to come out.  When he failed to do so they opened the unlocked front door, entered the house and found Joel trying to hide in a bedroom.  Joel was arrested.  Delon was also arrested; she was charged with harboring a fugitive, but those charges were later dismissed.  These facts establish that the officers had probable cause to believe Joel was inside the house and, armed with the warrant, they were legally justified in entering the house and arresting Joel.  See United States v. Jones, 641 F.2d 425, 428 (6th Cir. 1981)   They also had probable cause to arrest Delon.  These claims, therefore, must be dismissed.

The Court has also identified two more general claims.  First, Plaintiffs claim that Brandon is routinely stopped, confronted and patted down by police officers.  The Fourth Amendment, however, does not prohibit an officer from mistakenly confronting someone under suspicious circumstances.  Once a person is stopped the officer may "take such steps as are reasonably necessary to protect their personal safety and maintain the status quo" during the stop.  United States v. Hensley, 469 U.S. 221, 235 (1985); United States v.

Campbell, 178 F.3d 345, 349-50 (5th Cir. 1999)    Such brief stops, while annoying, are not unconstitutional, especially when, as in this case, the officer knows the person has a criminal history. United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999)    This claim must be dismissed.

Second, the Plaintiffs argue that Joel, who is well known to have mental problems, is routinely arrested when the proper reaction to his criminal behavior should be to get him mental health treatment.  In a perfect world officers and victims would overlook the criminal behavior of a mentally ill person and get him treatment rather than arrest and prosecute him.  But the world is not perfect.  Police officers are not qualified to diagnose a suspect's mental condition and decide whether he is immediate need of care.  At the very best, the decision to arrest a mentally ill suspect would constitute negligence which will not create liability.  Hare v. City of Corinth, 74 F.3d 638, 643 (5th Cir. 1996)    The Constitution does not mandate officers take criminal suspects that may need mental healthcare to a hospital emergency room or open mental care facility rather than a detention center. Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1995) (Negligent inaction by an officer does not violate the constitutional rights of a person lawfully held in custody.)  This would be especially true when a suspect is know to have been diagnosed, treated and

released, but still routinely engages in criminal activity.[1]  This general claim must also be dismissed.

For all the foregoing reasons it is the **ORDER** of this Court that the Defendants' Motion for Summary Judgment (Instrument no. 51) is **GRANTED** and the Plaintiffs' complaint is **DISMISSED**.

**DONE** at Galveston, Texas, this ____27th____ day of May, 2015.

_____
John R. Froeschner
United States Magistrate Judge

---

[1] In this case the evidence shows that from the start of the two year limitations period before this suit was filed Joel has been arrested 33 times and convicted on 18 occasions.